Re: Supplemental Retirement Benefit Package: Conflict of Interest Question
Pursuant to my discussion on this date with the J. Lynn Windel, attorney for the Murray State College Board of Regents, this letter will acknowledge that you have withdrawn your request for an informal opinion regarding the above-referenced subject matter. Instead, this letter will more expeditiously serve to confirm that Mr. Windel and I have discussed this matter on several occasions and jointly agree that the situation described in your letter presents no actual or perceived conflict of interest which would prohibit Murray State College from contracting with IDS Life Insurance Company.
As discussed with Mr. Windel in an earlier correspondence, Murray State College is one of many institutions comprising the Oklahoma State System of Education (the "System"). See, 70 O.S. 3201. The Board of Regents of Murray State College (the "Board") is created by statute at 70 O.S. 3407.2. As a statutorily created board, it is subject to the supreme law-making power of the Legislature. Okla. Const. Article V, Section 36. The enabling statute of the Board states that it shall "be the governing board of the College and hall have the supervision and management thereof and shall have the same powers and duties as governing boards of other institutions in the . . . System." 70 O.S. 3407.2(B).
A review of the powers and duties of other governing boards in the System reveal that the Murray State Board i similarly authorized to "establish and maintain plans for . . . retirement of employees . . . and for payment of deferred compensation . . . and annuity contracts . . . for such employees. . . ." see: 70 O.S. 3606(k), Powers and duties of Board of Regents for Oklahoma College of Liberal Arts; SEE also, 70 O.S. 3706(k), identical powers and duties of Board of Regents for Northern Oklahoma College).
Similarly, the Board of Regents of Murray State College are bound by the statutes governing the other institutions in the System regarding prohibited transactions between Board members and the Institution. In this regard, each Board member is bound by the following statutory parameters when considering whether his or her position on the Board might be considered a conflict of interest:
 "No member of the Board shall be employed upon any work to be performed in connection with (Murray State College), nor shall any member of the Board enter into any contract or business transaction involving a financial consideration with (Murray State College)."
SEE 70 O.S. 3602(c) (Oklahoma College of Liberal Arts); 70 O.S. 3702(c) (Northern Oklahoma College); and 70 O.S. 3802(c) (Rogers State College).
Each member of the Murray State Board of Regents is also bound by any applicable prohibitions falling under the State Ethics Commission Act ("Act"), 74 O.S. 4200 (1993) et seq,. and Ethics Commission Rules. The pertinent provision of the Act enunciating the prohibition on selling to the State is 74 O.S. 4/74 O.S. 241(4). That section provides:
 "No state employee shall sell or cause to be sold, either as an individual or through any business enterprise in which he holds a financial interest, goods or services to any state agency or to any business entity licensed by or regulated by the state governmental entity which the officer or employee serves. . ."
From the factual scenario presented in your May 16, 1994 letter, it is evident that the Board member in question, Reverend Mitchell, will not be involved in selling, causing to be sold or contracting with Murray State College on behalf of IDS in this matter in any manner whatsoever. Likewise, it is my understanding that Reverend Mitchell nor the Ardmore IDS office has any financial interest in any potential contract between IDS and Murray State.
1. The Ethics Commission Rules, which went into effect on July l, 1994, also address potential conflicts of interest involving state employees. There appear to be several Ethics Commission Rules which are applicable to the issue discussed herein. Should you desire an official interpretation of these Rules, you will need to contact the Ethics Commission directly. College. It is also my understanding that Reverend Mitchell has (disqualified himself from participating in any final action that is to be taken by the Board.
Based upon these presented facts, I share the opinion of Mr. Windel that the conduct of Reverend Mitchell and the position which he holds as an IDS independent agent do not run afoul of the aforementioned statutes. However, I do not have the authority to issue an interpretation regarding the applicability of the pertinent Ethics Commission Rules. You or Mr. Windel will need to seek an independent response from the Ethics Commission regarding this issue.
I pray this brief response will prove helpful for the Murray State Board of Regents. Should you have any further questions regarding this matter, please do not hesitate to contact me. I will now close the request file regarding your informal opinion request.
(Barry K. Koonce)